UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PETER G. BELLE, JR. | ) | CASE NO.: |
| 2178 East 80th Street | ) | |
| Cleveland OH 44103 | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION | ) | **MOTION (Under Favor of 41(g), Rules of** |
| 8701 Morrissette Drive | ) | **Criminal Procedure) FOR THE RETURN** |
| Springfield, VA 22152 | ) | **OF ILLEGALLY SEIZED PROPERTY** |
| | ) | |
| Respondent. | ) | |

Peter Griffen Belle, Jr., the Claimant herein was victimized by an illegal seizure of certain of his funds by various DEA Investigators, as they are dubbed within their agency. This designation conceals the fact that arguably, they are not authentic "law enforcement officers." For sure, they do not fit within the ambit of the definition set forth in **Rule 41(a)(2)(C), Federal Rules of Criminal Procedure**.

While the actual seizure of the monies from him occurred in Los Angeles, California, given the genesis of all of these events occurred in the Northern District of Ohio, it follows this Court has jurisdiction. Here, the facts will also show that Transportation Security Administration (TSA) agents targeted the Claimant to be seized and searched upon his arrival in Los Angeles. Indeed, as the following averments show, the Claimant was intercepted, seized, detained, searched, and certain monies (then in his possession) were illegally confiscated from him - - indeed in the name of the United States of America. Summarily, all this occurred following his arrival in Los Angeles.

Indeed, in light of the contentions, the following additional salient averments are made:

1. That in Cleveland, despite the fact that in traversing the apparatus operated by employees of "TSA" at the Cleveland Hopkins Airport (indeed on 2018), it had to have happened that the x-ray type of equipment used to screen carry-on luggage exposed the fact that the Claimant herein was in possession of a large sum of money.

2. That despite the fact the law seems clearly to be that: ". . . the government may not seize money, even half a million dollars, based on its bare assumption that most people do not have huge sums of money lying **about**, and if they do, they must be involved in narcotics or some other sinister activity" (*United States v. $506, 231.00 in U.S. Currency*, **125 F.3d 442, 452-54 [7th Cir. 1997]**), one of the "TSA" agents felt the need to advise the "DEA" of the presence of what (more probable than not) will be said to be an "organic mass[1]" inside Belle's carry-on luggage. Arguably, this fact resulted in his having been profiled as a "money courier," which is indefensible.

3. That upon his arrival in Los Angeles, the Claimant was accosted, after having rescinded to hearing his name broadcast. He was immediately seized (if not arrested) and literally escorted from the building - - indeed, across a roadway of sorts, into another building and told to open his bag, which order he complied with.

4. That in lieu of telling those officers to "go to hell", and that they needed a warrant if they wanted to look inside his bag, feeling compelled to submit to having been ordered to do so, by these men whole believed, albeit, wrongly so, they were "Federal Law Enforcement Officers," he submitted to their "orders."

---

[1] *United States v. U.S. Currency*, **2016 WL 5661608, at *1 (N.D. Ohio Sept. 30, 2016)**.

5. That in the wake of these certificated events these officers immediately seized his money. Indeed, in the name of the United States.

6. That is so doing, they violated not only "the taking clause of the 5th Amendment," they also, while continuing to act as though he (the Claimant) had no rights they were bound to respect, their agency, the Respondent herein, has continued to retain these monies - - as we see it on its own authority.

7. That to this end, Belle was compelled to leave California without his money - - indeed to his detriment; as well as, his chagrin and abandoned his intended stay in California.

8. That in seizing these monies, which were not only in the Claimant's exclusive, and sole possession, and which were owned by him (the solo prerequisite to the filing of this Motion), it could not be any clearer that these monies not being contraband *per se*, and which could not and cannot be related to any criminal offense, should not have been seized.

9. That given the incontrovertibility of the averments expressed above, we further contend these "investigators" lacked probable cause to conduct any of the searches, and the ensuing seizures, along with the continued possessions. Also, we contend this action likewise was indefensible. With this being so, to be sure, the Court must reckon with these facts. Indeed, in full accordance with **Rule 12(g), Federal Rules of Criminal Procedure**. Hopefully then, this matter must be dealt with on a *forthwith* basis.

10. That, for sure, no one can dispute "probable cause", must exist for any search and/or seizure when it occurs. This means our contention, of course, that the probable cause concept which must demonstrate in a trustworthy fashion a predicate basis existed not only for the various seizures here, but also for the continued retention of these monies.

WHEREFORE, based on the above showing, the quest here is for the Return of seized items.

Respectfully submitted,

/s/ James R. Willis
**JAMES R. WILLIS, ESQ. (0032463)**

and

/s/ Clarissa A. Smith
**CLARISSA A. SMITH, ESQ. (0095891)**
1144 Rockefeller Bldg.
614 West Superior Avenue
Cleveland, OH 44113
(216) 309-1784
(216) 575-7664 (Fax)
clarissa@casmithlawoffice.com
*Attorneys for Claimant*